ANDY LOKE V. STATE.

No. 26,025.  November 19, 1952.
Appellant's Motion for Rehearing Granted January 21, 1953.

*Allison & Allison,* by *Earl R. Allison,* Levelland, for appellant.

*E. W. Boedeker,* County Attorney, Levelland, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for possession of beer and whisky in a dry area for the purpose of sale, the jury having assessed the punishment at one year in jail and a fine of $1,000.

Appellant's propositions of law and his bills of exception relating thereto will be considered in the order presented in his brief.

It is contended that reversible error is shown in the overruling of appellant's motion to quash the jury panel.

Before proceeding to trial appellant filed his motion to quash the jury panel, the ground being that the county judge failed to deliver the envelopes containing the names of the jurors selected by the jury commissioners to the county clerk in open court as required by Art. 2112, Vernon's Ann. Civ. Statutes.

The evidence heard on the motion shows that the judge delivered such envelopes and lists to the clerk in the office of the county clerk and not in the courtroom.

This court has had occasion to pass upon the meaning to be given to the term "in open court."

In Townsley v. State, 103 Tex. Cr. R. 508, 281 S.W. 1054, in passing upon the question of whether or not the special venire had been drawn by the clerk "in open court," we said:

"Appellant urged that the venire be quashed, claiming it was not drawn in 'open court' as required by article 592, C.C.P. (1925 Revision), art. 660a, Vernon's 1922 Supp. The article in question provides that 'the clerk, in the presence of the judge, in open court, shall draw' the venire. In the present instance the court was not adjourned, recessed or in vacation, but when the venire was to be drawn, the judge went to the clerk's office in

the courthouse about 30 feet from the judge's bench in the court-room and in the clerk's office the clerk drew the venire in the presence of the judge. Section 7, art. 5, Constitution of Texas, provides that the district judges shall hold the terms of their court at the county seat of the various counties. To the same effect is article 1396, Vernon's C.S. (article 1602, 1925 Rev. C.S.). Article 1397, Vernon's C. S. (article 1603, 1925 Rev. C.S.), requires the commissioners' court to provide a courthouse for the county. The proceedings of court usually occur in the particular room set apart by the commissioners for holding the sessions of court in, but we think if the court is actually in session, that is 'open' as distinguished from vacation, recess, or adjournment, an act of the court would not be invalid solely because done in the clerk's office in the courthouse, and not in the courtroom. Atwood v. State, 257 S.W. 563, 96 Tex. Cr. R. 249; Block v. Kearney, 64 P. 267, 6 Cal. Unrep. 660; Reed v. State, 46 N. E. 135, 147 Ind. 41; Courtney v. State, 32 N. E. 335, 5 Ind. App. 356; Scott v. State, 32 So. 623, 133 Ala. 112; Smith, Adm'r, v. Jones et al. 23, La. 43."

We reaffirm such holding and conclude that the motion to quash the jury panel was properly overruled.

Appellant next asserts that the trial court erred in admitting over his objection, the fruits of the search which resulted in the finding of the beer and whisky. This proposition relates to Bill of Exception No. 2.

Bill No. 2 recites that the state attempted to introduce certain containers of alcoholic beverage, and appellant objected, the grounds of such objection being that the evidence was seized under a search warrant invalid on its face because of the insufficiency of the description of the premises searched; that the objection was overruled and exception was reserved.

The bill is deficient in the following particulars:

Nowhere in the bill is it shown that the containers of alcoholic beverage were received in evidence following the overruling of appellant's objection.

See Jackson v. State, 114 Tex. Cr. R. 659, 26 S.W. 2d 273; Adams v. State, 122 Tex. Cr. R. 144, 54 S.W. 2d 117.

The search warrant or affidavit is not made a part of the bills, nor does the bill set out the substance of either.

See Hubert v. State, 115 Tex. Cr. R. 391, 28 S.W. 2d 553; James v. State, 146 Tex. Cr. R. 456, 175 S.W. 2d 966.

The bill does not show as a fact that the search warrant was deficient in the particulars stated in the objection; therefore, it does not within itself manifest error.

The amount of whisky and beer found on the premises searched was greatly in excess of the amount required to make a prima facie case that it was possessed for sale under Articles 666-23 (a) and 667-25 (b), Vernon's Ann. P.C.

The judgment is affirmed.

Opinion approved by the Court.

ON MOTION FOR REHEARING.

MORRISON, Judge.

On original submission, it was urged by appellant that we reverse this conviction on several questions of law. We remain convinced that we properly disposed of the questions there raised.

Our attention has now been directed to certain discrepancies in the evidence which were not apparent at a time when our thoughts were centered on the contentions raised in appellant's brief, all of which related to procedure.

T. A. Rowland, a Texas Highway Patrolman, testified that, acting under a search warrant, he searched a certain premises in Hockley County (shown to be a dry area) and found some beer and whiskey, the quantity of each being in excess of the amounts which give rise to the statutory presumptions that it was possessed for the purpose of sale. No one was found at the premises searched. Rowland described such premises as follows:

"The place which we searched is 5½ miles south and a half mile east of the little community of Obydyke. It is in Hockley County, Texas and the road leading out to it is asphalt pavement. . . .

"The house is on the west side of the road and is about 50 yards or so from the road. It is an old farm house, a wooden frame house, with a run down fence about it. The back porch doesn't have a door to it and is screened. Out near the northwest

of the house there is an old wind mill. There was an old pickup northwest of the house a short piece. . . .

"South of the house was another old car, some 100 feet or so south of the house and around 40 or 50 feet south of the house was a little shack, out building of sheet iron. There were several trees around the yard. . . . "

For the purpose of proving that the beer and whiskey found was possessed by appellant and that he occupied and was in charge of the premises where it was found, the state offered M. M. Hood, an inspector for the Texas Liquor Control Board. Hood was not present at the search. He testified that he had a conversation with appellant at a certain place. Appellant said, according to Hood, that such place was his home and that it was his second crop year there, but the serious question is whether this was the place that was searched.

Hood described said premises so claimed by appellant to be his home as follows:

"This was about 6 miles from Obydyke. It was along a black top road, going south. The house faces the highway, on a farm to market road going south. It sets back off the road. . . . Yes I was with Mr. Thompson today when I drove by that place I talked to the defendant at. . . . This place where I talked with Mr. Loke was six miles southeast of Obydyke. That is, about ½ mile east and the rest of the way south."

According to the testimony offered by the state, there were several houses in the vicinity of the house searched. The witness S. J. Johnson described one of such houses as follows:

"The closest house to the one Mr. Loke lives in is about 4/10 of a mile and is north. That house sets probably 50 yards off the black top road."

Mr. Johnson did not know what house was searched. He described his own home as being about one-half mile from appellant's and described its location as follows:

"I live south from Mr. Loke. I always call the distance I live from Obydyke six miles, that is just about it."

Johnson testified that appellant's house was about 150 yards off the road. Rowland said the house searched was about 50 yards from the road.

Constable Thompson described a house other than that searched as being "probably ½ mile north of it . . . located about 200 yards back on the west side of the . . . same black top road, facing east."

Hood did not describe the appearance of the house claimed by appellant, nor its surroundings, and did not say how far the house was from the road. He did not testify on which side of the road it was located. His description of the premises claimed by appellant may well be applied to any one of the several other houses referred to in the testimony.

It is true that Constable Thompson testified that he "went by" the searched premises in company with "Mr. Hood," and Hood testified that he was with "Mr. Thompson" when he drove by the place where he talked to appellant.

In traveling the paved road a distance of some six miles south from Obydyke, it appears that one would pass all of the houses mentioned in the testimony.

We are unable to say that the state proved beyond a reasonable doubt that appellant claimed the searched premises as his home. We need not decide whether such proof would be sufficient to show that he occupied and controlled it so as to charge him with possession in law of the beer and whiskey found therein.

It follows that the evidence is insufficient to sustain the conviction.

The motion for rehearing is granted; the judgment of affirmance is set aside; and the judgment of the trial court is reversed and the cause remanded.